IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANNA HASBROUCK,<br><br>                    Plaintiff,<br><br>      vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>                    Defendant. | 4:23CV3066<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on motions for judicial review of a final decision of the Acting Commissioner of Social Security ("Commissioner"). The plaintiff, Anna Hasbrouck ("Hasbrouck"), appeals a final determination of the Commissioner denying her social security disability benefits. Filing No. 13. The Commissioner seeks an order affirming the decision. Filing No. 19. This Court has jurisdiction under 42 U.S.C § 405(g) and § 1383(c)(3).

## I.    BACKGROUND

### A.    Procedural History

On July 15, 2019, Hasbrouck applied for disability benefits under Title II of the Social Security Act alleging disability beginning April 11, 2016. Filing No. 1, Filing No. 7-2 at 11. Her application was denied initially and on reconsideration. *Id.* Hasbrouck requested, and was granted, a hearing before an administrative law judge ("ALJ") on April 28, 2022. Filing No. 7-2 at 11. At the hearing, Hasbrouck amended her alleged onset date of disability to October 5, 2018. *Id.* at 41. The ALJ denied benefits on May 16, 2022.

1

*Id.* at 11–28.  On February 23, 2023, the Appeals Council denied further review, and the ALJ's decision stands as the final decision of the Commissioner.  *Id.* at 2.

Hasbrouck challenges the ALJ's finding arguing that, in reaching his decision, the ALJ (1) failed to properly evaluate the medical opinions of treating provider Ann Scott, (2) failed to consider how Hasbrouck's treatment schedule would impact her ability to work, and (3) did not give proper credit to Hasbrouck's subjective reports of her physical and mental limitations.  Filing No. 14.

**B.     Hearing Testimony**

At the hearing on April 28, 2022, Hasbrouck testified that up until early 2022, she lived with her husband and two stepchildren.[1]  Filing No. 7-2 at 45.  Her husband suffered from various medical conditions which required Hasbrouck to provide daily care for him, including bathing, dressing, cooking meals, and transporting him to medical appointments.  *Id.* at 48–49.  She cared for her stepchildren by helping schedule appointments and filling out various benefits applications. *Id.* at 52.

Hasbrouck testified that she was last employed as a manager at a convenience store in April 2016.  In that position, Hasbrouck was responsible for waiting on customers, ordering, and stocking inventory, and managing other employees.  Filing No. 7-2 at 50. When she was let go from that position, management indicated to her it was because she did not get along with fellow employees and was difficult to work with.  *Id.* at 51. Hasbrouck also testified to previously working at a grocery store and daycare*.  Id.*  Since October 5, 2018, the only work for which Hasbrouck has received compensation is

---

[1] Hasbrouck testified that her husband passed away in February 2022.  The Court does not consider the impact of his death on Hasbrouck's conditions, if any, as her date of last insured, December 31, 2021, is prior to his passing.

babysitting. *Id.* at 46. While the conditions vary, she testified that she generally babysits 25-30 hours a week. *Id.* at 47. Hasbrouck testified that she only charges a few dollars per hour per child. *Id.* at 13; 46–47.

Hasbrouck states that her primary physical impairment is pain due to a torn meniscus in her left knee and degenerative disc disease in her back. Filing No. 7-2 at 52–53. She testified that the pain makes it hard for her to stand for long periods of time, she must change positions often, and lie down to achieve the most comfort. *Id.* at 53, 62–63. She experiences numbness in her legs and weakness in her knee. *Id.* Hasbrouck estimated that she can only stand or walk for 15-20 minutes before she needs to change positions. *Id.* at 62–66. Hasbrouck stated she takes medication and has received steroid injections for her pain but is ineligible for back or knee surgery at this time. *Id.* at 53–54. In addition to the above-conditions, Hasbrouck testified that she suffers from vertigo, sleep apnea, and carpal tunnel. *Id.* at 55–57.

In addition to her physical complaints, Hasbrouck testified that her mental health also prohibits her from working. She testified that she suffers from depression, anxiety, and post-traumatic stress disorder ("PTSD"). Filing No. 7-2 at 56, 58, and 60. Hasbrouck stated that her mental health conditions impact her concentration and make it difficult to work with others and take direction. *Id.* at 60. She testified takes medication for her mental health conditions which help her symptoms. *Id.* at 58.

Hasbrouck testified the medication she takes for her physical and mental conditions improve her symptoms, Filing No. 7-2 at 53–54, 58, but she still experiences pain. *Id.* at 67.

3

A vocational expert, Eric Dennison, also testified at the hearing. Filing No. 7-2 at 68. He was asked whether a worker with Hasbrouck's education and experience could find work if the hypothetical worker were:

> Limited to light exertional level, can occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, never climb ladders, ropes, or scaffolds, can understand, remember, and carry out simple instructions, can tolerate occasional changes in the work setting and can tolerate frequent interaction with supervisors, coworkers, and the general public.

*Id.* Mr. Dennison testified that Hasbrouck's past work would be eliminated but there were other jobs an individual could perform in the economy including a marker, cleaner, and garment sorter. *Id.* at 70. Additionally, Mr. Dennison testified that the positions of market and garment sorter would remain available for an individual who can stand and/or walk for four hours out of an eight-hour workday and can sit for the remaining four hours and remain on task at the workstation while seated. *Id.* at 71. In this hypothetical, a third position of checker would be appropriate. *Id.*

The ALJ also asked Mr. Dennison about the following restrictions:

> Can occasionally lift or carry 20 pounds, can occasionally reach, occasionally handle, occasionally operate foot controls, never stoop, crouch, crawl or climb. Can tolerate no exposure to unprotected heights, moving mechanical parts or atmospheric conditions, would require a 10-minute break every hour. Would need to change positions between sitting and standing every 15 minutes. Would need to be permitted to lie down for 30 minutes every two hours, can sit for two hours, stand for one hour, walk for one hour and work for a total of four hours in a day.

Filing No. 7-2 at 71. Under these restrictions, there are no jobs available in the national economy. *Id.* at 71–72. Mr. Dennison further testified that an employee can be off task up to 10 percent of the time or absent up to one day per month with anything above these ranges being preclusive to work. *Id.* at 72.

4

### C. Medical Evidence

Hasbrouck's medical records reflect that she has been diagnosed with obesity, degenerative joint disease and a meniscal tear in her left knee, degenerative disc disease of her lumbar spine, obstructive sleep apnea, major depressive disorder, anxiety disorder, and PTSD. See Filing No. 8-1 at 104–19, 322, 327, 48, and 203. She has a number of less severe conditions including dysphagia, gastroesophageal reflux, and bilateral carpal tunnel syndrome. Id. at 134 and 578. Advanced Practice Registered Nurse Ann Scott has been Hasbrouck's primary care provided since at least 2017. Id. at 333. For her mental health, Hasbrouck has been under the care of Licensed Mental Health Practitioner Wendy Hunt since May 2017. Id. at 162.

Hasbrouck underwent a sleeve gastrectomy in September 2017 which resulted in significant weight loss. Filing No. 8-1 at 134. Even so, Hasbrouck's BMI and physical examinations confirm obesity. See generally Filing No. 8-1.

An MRI of Hasbrouck's left knee showed moderate medial and patellofemoral degenerative changes, osteophytes, and osteochondral. Filing No 8-1 at 90. Subsequent diagnostic imaging in 2019 showed a tear of her meniscus. Id. at 322. She experienced decreased strength, gait abnormalities, tenderness, and ongoing pain. Id. at 370; 491–92; 508; 577. She treated her knee with steroid injections. Id. at 516. Hasbrouck consistently reported ongoing knee pain. Id. at 14, 27, 48, 318, 491, 507, 516. She is not a candidate for knee replacement at this time. Id. at 516.

Diagnostic imaging of Hasbrouck's spine illustrates moderate to severe canal stenosis with moderate foraminal stenosis at L4-L5 and moderate canal stenosis with sever foraminal stenosis at L5-S1. Filing No 8-1 at 323; 524. She experienced diminished

5

range of motion.  Id. at 137; 152.  Hasbrouck was prescribed Tramadol, gabapentin, Tylenol, a muscle relaxant, physical therapy, and received chiropractic care.  Id. at 487; 554–72.  She consistently reported to her health care providers that her back caused her ongoing pain.  Id. at 137, 152, 387, 487, 563, 573.

As to her depressive disorder, Hasbrouck's records reflect she reported difficulty concentrating, fatigue, irritability, anger, and feeling hopeless.  Filing No. 8-1 at 408–32. She was often observed by her mental health provider to be tearful, frustrated, irritable, hostile, and sarcastic.  Id.  She was also diagnosed with an anxiety disorder and PTSD based on excessive worrying, trouble, relaxing, heighten irritability, hypervigilance, and angry outbursts.  Id. at 164.

## II.   Discussion

### A.   Standard of Review

The Court reviews a denial of benefits by the Commissioner to determine whether the denial is "supported by substantial evidence on the record as a whole."  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (quoting *Dolph v. Barnhart*, 308 F.3d 876, 877 (8th Cir. 2002)).  Substantial evidence means something less than a preponderance of the evidence, but enough that a reasonable mind might accept the evidence as adequate to support a conclusion.  *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003)).

In determining whether there is substantial evidence to support the Commissioner's decision, this court must consider evidence that detracts from the Commissioner's decision as well as evidence that support.  *Finch v. Astrue*, 547 F.3d 933,

935 (8th Cir. 2008). The Court also determines whether the Commissioner's decision "is based on legal error." *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000).

    **B.**     **Eligibility**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). Accordingly, the Social Security Administration has promulgated a five-step sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4); *Swedberg v. Saul*, 991 F.3d 902, 905 (8th Cir. 2021). The ALJ considers

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). The claimant has the burden to show he is disabled through the first four steps. *See Moore v. Astrue*, 572 F.3d 520, 523. The steps are followed in sequential order, such that "[i]f it can be determined that a claimant is not disabled at a step, the ALJ does not need to continue to the next step." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)).

Steps four and five require the ALJ to assess a claimant's residual functioning capacity ("RFC") – that is what he or she can do despite the limitations caused by any mental or physical impairments. *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014); 20 C.F.R. § 404.1545. The ALJ is required to determine a claimant's RFC based on all

7

relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). An ALJ's RFC determination (1) must give appropriate consideration to all of a claimant's impairments; and (2) must be based on competent medical evidence establishing the physical and mental activity that the claimant can perform in a work setting. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).

### C. ALJ's Findings

In evaluating Hasbrouck's claim, the ALJ followed the sequential evaluation process. Filing No. 7-2 at 11. The ALJ first found at Step One that Hasbrouck had not engaged in substantial gainful activity since October 5, 2018. *Id.* at 13.

At Step Two, the ALJ found that Hasbrouck had the following severe impairments: obesity, degenerative joint disease and a meniscal tear in her left knee, degenerative disc disease of her lumbar spine, obstructive sleep apnea, major depressive disorder, anxiety disorder, and PTSD. *Id.* at 13–14. He also determined Hasbrouck had multiple non-severe impairments—those which have no more than a minimal limitation on her ability to perform basic work activities—including GERD, dysphagia, hypertension, hyperlipidemia, hypothyroidism, and bilateral carpal tunnel syndrome, status post release. *Id.* at 14.

The ALJ next determined the severity of Hasbrouck's mental impairments did not meet or medically equal the necessary criteria. Filing No. 7-2 at 15. The ALJ considered the four broad functional areas of mental functioning set out for evaluating mental disorders to include: 1) understanding, remembering, or applying information; 2)

8

interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c); 416.920a(c).

The ALJ concluded at Step Three that Hasbrouck's severe impairments, or the combination of impairments, did not meet or equal the listing of impairments that would render her presumptively disabled under 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then moved to Steps Four and Five to determine whether Hasbrouck can "perform 'past relevant work,' and if not, whether [he] can perform 'any other work.'" *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017). Making these determinations required the ALJ to assess Hasbrouck's RFC, which is the most a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). RFC is determined "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his] limitations." *Kraus*, 988 F.3d at 1024 (quoting *Baldwin*, 349 F.3d at 556 (8th Cir. 2003)).

According to the ALJ, Hasbrouck has the RFC to perform light work with environmental limitations. Filing No. 7-2 at 15–26. "After careful examination of the entire record", the ALJ determined Hasbrouck's RFC is as follows:

> The claimant had the residual functional capacity to perform light work as defined in 20 C.R.F. 404.1567(b) with the following exceptions: she was able to stand and/or walk for 4 hours out of [an] 8-hour workday. The claimant could sit for the remaining 4 hours and can remain on task and at the workstation while seated. She was able to balance, stoop, kneel, crouch, crawl, and climb ramps or stairs occasionally. The claimant could never have climbed ladders, ropes, or scaffolds. She was able to understand, remember, and carry out simple instructions. The claimant could have tolerated occasional changes in the work setting. She was able to tolerate frequent interaction with supervisors, co-works and [the] general public.

*Id.* at 17. With that RFC, the ALJ found Hasbrouck could not perform her past relevant work, but could perform other light, unskilled work, such as a marker, checker, or garment sorter. *Id.* at 27. Consequently, the ALJ found Hasbrouck was not disabled. *Id.* at 28.

The ALJ acknowledged that Hasbrouck's medically determinable impairments could have been reasonable expected to produce some of the alleged symptoms, but determined Hasbrouck's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely supported by the medical evidence and other evidence in the record." Filing No. 7-2 at 20.

In reaching this determination, the ALJ found that while there was some objective medical evidence that supported Hasbrouck's allegations regarding her physical limitations, more often the medical evidence supported the RFC outlined above. Filing No. 7-2 at 20. Specifically, as to her knee and spine conditions, the ALJ found that Hasbrouck's "generally normal lower extremity strength, the absence of evidence of cord or nerve root compression in her lumbar spine, and [Hasbrouck's] ability to walk normally at various healthcare encounters support her ability to stand/walk [for four hours total during an eight-hour] workday." *Id.* at 21.

As to Hasbrouck's mental impairments, the ALJ again conclude the "objective medical evidence before the undersigned is not entirely consistent with the claimant's allegations." Filing No. 7-2 at 21. The ALJ noted her medical records illustrated she often presented with a "cooperative and appropriate mood and affect," was "oriented and alert," and "interactive and cooperative" in therapy. *Id.* The ALJ further concluded that Hasbrouck's improvements with treatment—therapy and medication—support the RFC stated above.

10

The ALJ also concluded that Claimant's own reports of her work activities and activities of daily living during the relevant time period are consistent with the RFC assigned and inconsistent with some of her allegations. Filing No. 7-2 at 21. The ALJ noted that Hasbrouck was the full-time caregiver of her chronically ill husband, a parent to her stepchildren, that she managed her household, and babysat children. Id. He claimed the record is "devoid of evidence showing serious difficulties interacting with other people, concentrating, or other inability to complete basic mental work activities." Id. "A residual functional capacity for simple work with no more than frequent social interactions or occasional workplace changes is supported by the claimant's presentation at times as slowed or fatigued, irritable, and circumstantial in her thought process." Id. According to the ALJ, the record does not include medical evidence suggesting that the claimant could not have understood, remembered, and carried out simple tasks on a sustained basis. Id. at 22.

The ALJ found the opinions of two state agency medical consultants, Dr. Suslow-Geditz and Dr. Wheeler, persuasive. Filing No. 7-2 at 23. Dr. Suslow-Geditz opined that Hasbrouck could frequently lift and/or carry 10 pounds and occasionally lift and/or carry 20 pounds, could sit for about 6 hours in an 8-hour workday and stand and/or walk for 4 hours in an 8-hour workday, could occasionally climb ramps and stairs, and never climb ladders, ropes, and scaffolds. Filing No. 7-3 at 26–40. Dr. Wheeler adopted this opinion in its entirety. Id. at 43–60.

Hasbrouck's primary care provider, Ann Scott, has treated Hasbrouck since 2017. Filing No. 8-1 at 333–38. Scott indicated that Hasbrouck experiences "significant low back pain that radiates down bilateral legs", "intermittent numbness [and] tingling down

11

both legs", "occasional weakness in legs", and "generalized fatigue." *Id*. at 335. She further observed that Hasbrouck is "slow to go from sitting to standing positions" and has an "abnormal gait." *Id.* Scott prescribed gabapentin and tramadol for Hasbrouck's pain. *Id.* Based on Hasbrouck's conditions, Scott opined that she could only sit for two hours, stand for one hour, and walk for one hour during a workday and seldom lift or carry up to twenty pounds. She further opined that Hasbrouck could occasionally work at a slow pace and would require the ability to shift positions at will, take unscheduled breaks, and lie down during the day. *Id.*

The ALJ found Scott's opinions unpersuasive. He concluded the objective medical evidence and Hasbrouck's activities of daily living do not support the limitations proposed by Scott and that there were internal inconsistencies with her opinion. Filing 7-2 at 23.

The ALJ found that there are jobs in significant numbers in the national economy that Hasbrouck could perform with the RFC he assigned. The ALJ thus concluded Hasbrouck was "not under a disability, as defined in the Social Security Act, at any time from October 5, 2018, the amended alleged onset date, through December 31, 2021, the date last insured." Filing No. 7-2 at 28.

### D. Analysis

Hasbrouck makes three primary arguments on review: the ALJ failed to (1) properly evaluate the medical opinions of Ann Scott, APRN, (2) consider Hasbrouck's potential absences due to ongoing medical treatment and its effect on Hasbrouck's ability to maintain full time employment,[2] and (3) give proper credit to Hasbrouck's own reports of her physical and mental limitations or restrictions. Filing No. 14 at 9–10.

---

[2] The Court does not reach this argument as it finds the other two arguments to be determinative.

12

The Court has carefully reviewed the record and finds that the ALJ's denial of benefits should be reversed. In this case, the ALJ improperly discounted the claimant's complaints of disabling pain. Further, the ALJ did not properly credit Hasbrouck's treating health care provider's opinion. In doing so, the ALJ improperly assigned Hasbrouck a RFC that did not take into account all of her limitations.

In determining whether to fully credit a claimant's subjective complaints of disabling pain, the Commissioner engages in a two-step process: (1) the ALJ considers whether there are underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms; and (2) if so, the ALJ evaluates the claimant's description of the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to work. Soc. Sec. Rul. 16-3p, 81 Fed. Reg. 14166-01, 2016 WL 1020935(F.R.) (Mar. 16, 2016) (Policy Interpretation Titles II & XVI: Evaluation of Symptoms in Disability Claims). In the second step of the analysis, in recognition of the fact that "some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence[,]" an ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*, 81 Fed. Reg. at *14168.

To determine the intensity and persistence of an individual's symptoms, the ALJ evaluates objective medical evidence, but will not evaluate an individual's symptoms

based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled. Id. The ALJ must not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Id. at *14169.

Here, the ALJ improperly discredited Hasbrouck's reports of ongoing pain and its impact on her ability to work. In doing so, he relied heavily on Hasbrouck's activities of daily living to support his conclusion that her reports were unsupported. Filing No. 7-2 at 21 (stating Hasbrouck's activities of daily living are "far more robust than her allegations suggest.") He used the same information in discrediting the opinion of Hasbrouck's primary care provider, Ann Scott. Id. at 23. This conclusion is misplaced. First, the activities that Hasbrouck undertook are not inconsistent with her testimony—or her physician's reports—that she can only stand, sit, walk for limited periods of time without changing positions. Rather, as Hasbrouck testified, she may cook for a short period of time before sitting down to rest, she plans her grocery shopping to ensure she is done before she begins to experience numbness in her legs, and that she changed positions often when attending her husband's appointments. See id. at 53 and 63–66. All of the activities described provide Hasbrouck the opportunity to readjust should her pain warrant it. Moreover, it is well recognized that a claimant may have disabling pain and still be able to perform some daily home activities. Burress v. Apfel, 141 F.3d 875, 881 (8th Cir. 1998) ("the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."); see also Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005).

14

"An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole." *Jackson v. Apfel*, 162 F.3d 533, 538 (8th Cir. 1998) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)).  Here, Hasbrouck's subjective complaints were *consistent* with the record.  Hasbrouck's imaging showed moderate medial and patellofemoral degenerative changes in her knee and a tear in her meniscus.  Diagnostic imaging of her spine showed moderate to severe canal stenosis.  Hasbrouck regularly reported ongoing pain as a result of these conditions and pursued medication and therapies to help alleviate her symptoms.  *See* Soc. Sec. Rul. 16-3p, 81 Fed. Reg. 14166-01, 2016 WL 1020935(F.R.) (Mar. 16, 2016) (taking into consideration an individual's attempts to seek medical treatment and follow treatment recommendations when evaluating intensity and persistence).  None of the objective medical evidence demonstrates that Hasbrouck was not experiencing ongoing pain.

Next, the Court finds the ALJ erred in finding Ann Scott's opinion to be unpersuasive because of the alleged inconsistencies with the other evidence in the record.  Specifically, the ALJ concluded that Scott's assessment was unsupported by the record and was internally inconsistent because it failed to acknowledge that Hasbrouck's pain medication had good effect.  Filing No. 7-2 at 23.  He further took issue with Scott's opinion as it relates to Hasbrouck's activities of daily living.  *Id.*

The ALJ's claim that Ann Scott's opinion is internally inconsistent is without merit.  While Scott indicated that Hasbrouck's pain medications had good effect, Scott also treated Hasbrouck for multiple years and observed her ongoing pain and prescribed appropriate medication.  The fact that Scott indicated the pain medication had "good effect" does not discredit her other conclusions that Hasbrouck has ongoing limitations.

15

The same can be said for Scott's incorporation of Hasbrouck's activities of daily living. The ALJ erred in determining Scott's opinion to be unpersuasive.

The Court finds that Scott's opinion and the evidence in the record supports Hasbrouck's claim of disability, as previously discussed herein. While the ALJ need not grant any medical opinion, including that of a treating provider, controlling weight under applicable social security administration rules, the ALJ instead must consider (1) supportability; (2) consistency; (3) relationship to the claimant, including (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c. As discussed above, Scott's opinions were supportable and consistent with the record as a whole. The remaining factors further credit Scott's opinion as she has been the claimant's primary care provider since at least 2017.

Hasbrouck's testimony regarding her physical limitations were consistent with her activities of daily living and the limitations placed on her by her treating healthcare provider. The claimant's ability to consistently work or perform the work activities required by the RFC proposed by the ALJ's were not supported by either the treating physician, the medical record, nor the claimant's testimony. When questioned about an RFC that incorporated the opinions of Ann Scott, the vocational expert testified that there are no jobs available in the national economy. Filing No. 7-2 at 71–72. The Court finds that the job suggestions provided by the vocational expert are inadequate as they are based on hypothetical questions from the ALJ which did not consider all of Hasbrouck's relevant impairments. The vocational expert clearly determined that Hasbrouck could not perform

16

jobs in the national economy if she had to leave the workstation to change positions, lie down, take unscheduled breaks, or was off task ten percent of the day.

The Court finds that Hasbrouck's disabilities include obesity, degenerative joint disease and a meniscal tear in her left knee, degenerative disc disease of her lumbar spine, obstructive sleep apnea, major depressive disorder, anxiety disorder, and PTSD and that these disabilities are severe impairments. Further, based on the limitations set out by her treating provider, there are not jobs available in the national economy that Hasbrouck can perform. Under the circumstances, the Court finds substantial evidence in the record is inconsistent with the ALJ's findings, and the ALJ's decision should be reversed.

### III.    Conclusion

The clear weight of the evidence points to a conclusion that Hasbrouck has been disabled since her claimed onset date of October 5, 2018. "Where further hearings would merely delay receipt of benefits, an order granting benefits is appropriate." *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001) (quoting *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984)).

Accordingly,

IT IS ORDERED THAT:

1. The plaintiff's motion to remand, Filing No. 13, is granted;
2. The defendant's motion to affirm, Filing No. 19, is denied;
4. The decision of the Commissioner of the Social Security Administration is reversed;

5. This action is remanded to the Social Security Administration for an award of benefits; and

6. A separate judgment will be entered in accordance with this memorandum and order.

Dated this 18th day of January, 2024.

> BY THE COURT:
>
> s/ Joseph F. Bataillon
> Senior United States District Judge